[No. A068473. First Dist., Div. Three. Apr. 24, 1996.]

WINDING CREEK et al., Plaintiffs and Appellants, v.
DOUGLAS S. McGLASHAN et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III of the Discussion.

COUNSEL

David M. Tuttelman, Mallen, Cabrinha & De Carion and David P. De Carion for Plaintiffs and Appellants.

Long & Levit, David Ian Dalby and Thomas Weathers for Defendants and Respondents.

OPINION

**CORRIGAN, Acting P. J.**—The trial court sustained, without leave to amend, the demurrer of various attorney defendants on statute of limitations grounds. Following plaintiffs' appeal, we hold that the third amended complaint relates back to an earlier pleading filed before the statute of limitations had run and, accordingly, is not time barred. In the unpublished portion of this opinion, we further conclude the third amended complaint adequately alleges causes of action for breach of fiduciary duty and negligent misrepresentation against the attorney defendants. The judgment is reversed and remanded for further proceedings.

*Background*

I. *The Partnerships*

The third amended complaint reveals the following facts, which we assume to be true for purposes of this appeal. (*Pierce* v. *Lyman* (1991) 1 Cal.App.4th 1093, 1097 [3 Cal.Rptr.2d 236].) Plaintiffs Winding Creek, Forest Glen Associates, Amber Forest, and Glen Woods are limited partnerships formed in 1985 for the purpose of investing in a Nevada County mobilehome park. Until July 1991, defendant Montross Barber Investments, Inc. (MBI), owned and managed by defendants G. Michael Montross and

George A. Barber, was the general partner of each of the plaintiff partnerships.[1]

Identical agreements governed each of the plaintiff partnerships. As general partner, MBI exercised exclusive control over most aspects of partnership business, subject in some instances to voting rights of the limited partners. Of particular significance here, section 15.4 of the agreements allowed each partnership, at the discretion of the general partner, to loan funds from its contingency reserve account subject to the following conditions: "a. Such loan or hypothecation will not impair the ability of the Partnership to meet contingencies and obligations; and [¶] b. Such loan is fully secured by a deed of trust with power of sale and assignment of rents clauses or other security instrument with similar provisions approved by the General Partner; and [¶] c. Such loan or hypothecation is in the best interest of the Partnership." Excess funds not required to conduct partnership business could, under certain circumstances, be returned to the limited partners at the discretion of the general partner. The partnership agreements also authorized the general partner "To employ from time to time, at the expense of the Partnership, building management agents, other on-site personnel, insurance brokers, real estate brokers and loan brokers, consultants, accountants and attorneys[.]"

By 1991, the partnerships were in serious financial trouble. From the inception of the partnerships, MBI had commingled some $300,000 of the partnerships' money with other funds and loaned it to other, financially distressed MBI-controlled entities without adequate security, proper documentation, or disclosure to the limited partners. Plaintiffs allege that these loans contravened various provisions of the partnership agreements, including the requirements of section 15.4 set forth above; impaired the partnerships' ability to develop the mobilehome park; and resulted in a total loss of the $300,000.[2]

---

[1] In July 1991, MBI was sold to John Christian and defendant J. Andrew Krake, and its name was changed to Renvest Properties, Inc. For simplicity, we refer to the corporation as MBI, its name during most of the events relevant to this appeal. According to plaintiffs, MBI was ousted on July 9, 1991, and plaintiff Charles Olson has been the general partner of the plaintiff partnerships since then. Christian and defendants Krake, Montross, Barber, and MBI apparently assert, or at some point asserted, that MBI remained the legitimate general partner after that date.

[2] Plaintiffs also allege that MBI, Montross, and Barber had misrepresented to potential investors the number of mobilehome spaces on the property, inflating the financial projections set forth in the prospectus; denied plaintiffs their rightful access to partnership books and records; and wrongfully denied plaintiff Olson's claim to general partner status. These and other alleged wrongdoings do not seem to involve the attorney defendants and are not relevant to the issues on appeal.

## II.  *The Lawsuit*

Plaintiffs filed suit against MBI, Montross, Barber, and others on August 7, 1991. The complaint included causes of action for breach of contract, breach of fiduciary duty, fraud, negligence, conversion, interference with contract, and injurious falsehood. Paragraph 14 stated a standard fictitious defendant allegation: "Defendant [*sic*] Doe 1 through Doe 50, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this Complaint by inserting their true names and capacities herein. *Plaintiffs are informed and believe and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurances [sic] herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants.*" (Italics added.) In paragraph 15, plaintiffs alleged on information and belief that ". . . each Defendant acted as agent for their co-Defendants and were acting in that capacity at all times herein mentioned, or were in the employment of said other Defendants acting within the course and scope of their employment." These allegations were incorporated by reference into each cause of action.

Plaintiffs' first amended complaint, filed August 20, 1991, repeats these allegations and incorporates them by reference into each cause of action.

On April 2, 1992, during a deposition in a related action, plaintiffs allegedly learned for the first time that Douglas S. McGlashan and McGlashan & Sarrail, attorneys hired by the general partner, had advised that partnership funds could be commingled with funds of other MBI-related entities and loaned to third parties.[3]

On April 12, 1994, over two years after the deposition, plaintiffs filed a third amendment to the first amended complaint,[4] substituting Douglas S. McGlashan, Colleen S. McAvoy, and McGlashan & Sarrail (the attorney defendants) for the fictitious defendants designated in the first amended complaint as Does 2, 3, and 4 in the second, third, and fourth causes of action. Later that month, plaintiffs filed their second amended complaint. This pleading (1) restated the causes of action against the original defendants; (2) added thirteenth and fourteenth causes of action against the attorney defendants, for breach of fiduciary duty and negligent misrepresentation; and (3) deleted any reference to the attorney defendants from the second, third, and fourth causes of action.

---

[3]The date of discovery is not alleged in the third amended complaint, but appears in two declarations of which the superior court took judicial notice. According to the declarations, the attorneys rendered this advice to "MONTROSS, BARBER, and MBI . . . ." We presume this means they advised MBI through Montross and Barber.

[4]The first two amendments to the first amended complaint are irrelevant to this appeal.

The attorney defendants demurred to the second amended complaint on the grounds that the claims against them were barred by the one-year statute of limitations for legal malpractice and failed to state a cause of action. The superior court sustained the demurrer on the statute of limitations ground and granted leave to amend.

On August 1, 1994, very nearly three years after they initiated suit, plaintiffs filed their third amended complaint. This complaint added allegations that plaintiffs "discovered for the first time that loss of their funds was likely" on July 29, 1993, upon learning that MBI would not be able to repay any significant portion of the improperly loaned funds. The attorney defendants demurred, again arguing the statute of limitations had run and that plaintiffs had failed to state a cause of action against them.

The superior court sustained the demurrer without leave to amend, finding that the action was time barred. The judge explained: ". . . I am going to sustain the demurrer without leave to amend. I don't believe that counsel has adequately shown that they could not have and should not have filed the actual named defendants in prior complaints and within the statute of limitations." Plaintiffs appealed from the ensuing judgment of dismissal after the trial court denied their motions to reconsider and to vacate the judgment.

*Discussion*

## I. Standard of Review

The applicable standard of review is well settled. "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

## II. *The Third Amended Complaint Relates Back*

The attorney defendants argue that the one-year limitations period for attorney malpractice (Code Civ. Proc., § 340.6)[5] began to run no later than April 2, 1992, when plaintiffs were informed of the attorney defendants' alleged advice to MBI concerning the partnerships' funds. Accordingly, they contend, any malpractice claim against the attorney defendants expired on April 2, 1993, more than a year before plaintiffs first attempted to substitute them for Does 2, 3, and 4. Plaintiffs, on the other hand, argue that they sustained no actual injury for purposes of section 340.6 and, hence, that the malpractice limitations period did not begin running until they obtained a default judgment against Montross in a related bankruptcy action in November 1994. We need not resolve this dispute, however, because our examination of the record reveals that the third amended complaint relates back to the filing date of the first amended complaint, thus defeating the statute of limitations.

"A plaintiff ignorant of the identity of a party responsible for damages may name that person in a fictitious capacity, a Doe defendant, and that time limit prescribed by the applicable statute of limitations is extended as to the unknown defendant. A plaintiff has three years under section 581a, subdivision (a)[6] after the commencement of the action to discover the identity of the unknown defendant and effect service of the complaint. [Citation.] When the complaint is amended to substitute the true name of the defendant for the fictional name, the defendant is regarded as a party from the commencement of the suit, provided the complaint has not been amended to seek relief on a different theory based on a general set of facts other than those set out in the original complaint. [Citations.] The statute (§ 474) must be liberally construed to enable a plaintiff to avoid the bar on the statute of limitations where he is ignorant of the identity of the defendant. [Citation.]" (*Munoz v. Purdy* (1979) 91 Cal.App.3d 942, 946 [154 Cal.Rptr. 472], fn. omitted.)

The attorney defendants argue that a technical defect in the first amended complaint, which was filed within the limitations period, defeats application of the relation-back doctrine in this case. Because the original

---

[5]All statutory citations are to the Code of Civil Procedure.

[6]Section 581a, subdivision (a) was repealed in 1984 and replaced in relevant part by sections 583.210 and 583.250, which similarly require plaintiffs to serve the summons and complaint within three years of filing suit. (Stats. 1984, ch. 1705, §§ 3, 5, pp. 6176-6178.)

pleading failed to include charging allegations against the fictitious defendants, they urge, the third amendment to that complaint does not relate back and the malpractice allegations against them are time barred.[7] We disagree.

██ Even if a plaintiff meets the other requirements of Doe pleading,[8] an amended pleading will not relate back unless the original complaint set forth or attempted to set forth some cause of action against fictitiously named defendants. (*Marasco* v. *Wadsworth* (1978) 21 Cal.3d 82, 87 [145 Cal.Rptr. 843, 578 P.2d 90]; *Austin* v. *Massachusetts Bonding & Insurance Co., supra,* 56 Cal.2d at p. 599; *Breceda* v. *Gamsby* (1968) 267 Cal.App.2d 167, 173 [72 Cal.Rptr. 832]; *Williams* v. *Goodman* (1963) 214 Cal.App.2d 856, 861 [29 Cal.Rptr. 877].) "It is not enough, of course, simply to name 'Doe' defendants. Rather, the complaint must allege that they were *responsible* in some way for the acts complained of." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 1 (The Rutter Group 1995) ¶ 6:85, p. 6-17, citing *Williams* v. *Goodman, supra.*) As another commentator explains, "Although the ironclad rule that the original complaint must contain charging allegations against the fictitious defendants may trap the unwary, compliance is relatively simple. The addition of 's' to 'defendant' in the charging allegations will suffice as long as the complaint does not limit the word 'defendants' to those sued by their correct names." (Hogan, *California's Unique Doe Defendant Practice: A Fiction Stranger Than Truth* (1977) 30 Stan.L.Rev. 51, 80, fns. omitted; see *Hollister Canning Co.* v. *Superior Court* (1972) 26 Cal.App.3d 186, 194-196 [102 Cal.Rptr. 713] [charging allegations referring to "defendants" embraced Doe defendants; amendment related back]; *Milam* v. *Dickman Construction Co.* (1964) 229 Cal.App.2d 208, 213-214 [40 Cal.Rptr. 130] [allegations were restricted to named defendants; no relation back]; *Marasco* v. *Wadsworth, supra,* 21 Cal.3d at p. 87 [allegation that " 'defendants and each of them' " were negligent supports relation back].)

██ The allegations of the first amended complaint satisfy this requirement. As noted above, every single cause of action stated in that pleading

---

[7]We note that the pleading at issue here is the third amended complaint, filed August 1, 1994, not the third amendment to the first amended complaint, filed April 12, 1994. The attorney defendants' apparently erroneous references to the superseded *amendment* do not affect our analysis.

[8]The attorney defendants do not contend that plaintiffs were not actually ignorant of the Doe defendants' identity or involvement when they first filed suit. (See *Munoz* v. *Purdy, supra,* 91 Cal.App.3d at p. 946 [plaintiff is deemed ignorant of the name of a defendant for purposes of the fictitious defendant statute if he or she knew the person's identity but not the facts supporting a cause of action against that person].) Nor do they deny that the malpractice allegations against them are based on the same general set of facts set forth in the original complaint and, thus, are appropriate even though they involve a new theory or cause of action. (See *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681]; *Olson* v. *Volkswagen of America* (1988) 201 Cal.App.3d 1437, 1442-1443 [247 Cal.Rptr. 719].)

incorporated by reference plaintiffs' allegation that ". . . each of the fictitiously named Defendants is responsible in some manner for the occurances [*sic*] herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by those Defendants." Also incorporated in each cause of action was the allegation that ". . . each Defendant acted as agent for their co-Defendants and were acting in that capacity at all times herein mentioned, or were in the employment of said other Defendants acting within the course and scope of their employment." The prayer for relief requests judgment "against Defendants and each of them . . . ." The complaint thus alleges that defendants, whose identities or culpable acts were unknown at the time of filing, are in some way responsible for the acts of which plaintiffs complain. [9] The cases on which the attorney defendants rely are inapposite because, in each, *no* attempt was made to charge the fictitious defendants with responsibility for the plaintiffs' injuries. (See *Milam* v. *Dickman Construction Co.*, *supra*, 229 Cal.App.2d at pp. 213-214 [charging allegations restricted to named defendants]; *Williams* v. *Goodman*, *supra*, 214 Cal.App.2d at pp. 859-860 [original complaint alleged only that Doe defendants' true names were unknown and plaintiff would amend when apprised of their identities]; *Stanley* v. *Kawakami* (1954) 127 Cal.App.2d 277, 278 [273 P.2d 709] [same]; *Sullivan* v. *Wright* (1954) 124 Cal.App.2d 836, 838 [269 P.2d 671] [same]; *Kolodziejski* v. *Hover* (1954) 124 Cal.App.2d 731, 732-733 [269 P.2d 163] [same]; *Gates* v. *Wendling Nathan Co.* (1938) 27 Cal.App.2d 307, 313, 315 [81 P.2d 173] [same], disapproved on other grounds in *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 694 [36 Cal.Rptr. 321, 388 P.2d 353].)

One further point bears noting. The trial court's oral ruling suggests its decision was based at least in part on plaintiffs' two-year delay between learning of the attorney defendants' alleged involvement in the improper loans and naming them as defendants. ■ Once suit has been filed, unreasonable delay in filing an amended pleading after discovering a Doe defendant's identity may bar a plaintiff from using the fictitious name device. To preclude relation back on this basis, however, the opposing party must show the plaintiff was dilatory and that the defendant was prejudiced by the delay. (*Barrows* v. *American Motors Corp.* (1983) 144 Cal.App.3d 1, 9 [192 Cal.Rptr. 380]; *Sobeck & Associates, Inc.* v. *B & R Investments No. 24* (1989) 215 Cal.App.3d 861, 869 [264 Cal.Rptr. 156], citing *Barrows* with approval; see *Hazel* v. *Hewlett* (1988) 201 Cal.App.3d 1458, 1466 [247 Cal.Rptr. 723].) ■ The attorney defendants have made no showing of

---

[9]Despite the attorney defendants' vague protest that plaintiffs "neglect[ed] to define or describe these 'occurrences [*sic*]' " alleged in the complaint, they cite no authority, and we have found none, requiring a more specific statement of the theory of Doe defendant liability. At any rate, the complaint is quite clear as to the nature of the alleged acts that gave rise to the lawsuit.

prejudice here and, in fact, agree that "unreasonable delay and prejudice are irrelevant to this action."

We conclude that the 13th and 14th causes of action of the third amended complaint are not barred by the statute of limitations. We proceed to the attorney defendants' remaining contentions in support of the demurrer.

### III. *The Malpractice Allegations\**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### *Disposition*

The judgment is reversed. The matter is remanded with instructions to the trial court to enter an order overruling the demurrer to the third amended complaint. Each party is to bear its own costs on appeal.

Parrilli, J., and McGuiness, J.,† concurred.

---

*See footnote, *ante*, page 933.
†Judge of the Alameda Superior Court sitting under assignment by the Chairperson of the Judicial Council.